## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID WILLIAMS, <br><br> GIOVANNI DE AMICI, <br><br> GODDARD ENGINEERS, SCIENTISTS AND TECHNICIANS ASSOCIATION, IFPTE LOCAL 29, 8800 Greenbelt Rd., Greenbelt, Maryland 20771, <br><br> *Plaintiffs,* <br><br> v. <br><br> NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, 300 Hidden Figures Way SW, Washington, DC 20546, <br><br> JARED ISAACMAN, in his capacity as Administrator of the National Aeronautics and Space Administration, 300 Hidden Figures Way SW, Washington, DC 20546, <br><br> JAMES BYRON, upon information and belief, in his capacity as Acting Archivist of the United States (or the official performing the duties of the Archivist), 601 Adelphi Road, College Park, Maryland 20740, <br><br> *Defendants*. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br><br> Case No. _____ |

## INTRODUCTION

1.    This action seeks declaratory and injunctive relief to prevent the National Aeronautics and Space Administration ("NASA") and the Archivist of the United States ("Archivist") (collectively "Defendants") from the unlawful disposition, destruction and dispersal of federal records and materials housed at the National Aeronautics and Space Administration's Goddard Information and Collaboration Center in Greenbelt, Maryland (the "Goddard Library").

It also seeks review and reversal of unexplained and abrupt decisions to permanently shutter the Goddard Library and the NASA Space Science Data Coordinated Archive (the "Database"), closures that threaten the loss of critical institutional knowledge that NASA has accumulated in compliance with its statutory mandates and consistent agency policy since its founding.

2.      From the moment Congress created a national space agency, it understood that activities in aerospace would generate knowledge whose value extended far beyond any individual mission, program, or budget cycle. Accordingly, Congress embedded into NASA's founding statute mandatory obligations to accumulate, preserve, and disseminate institutional knowledge as a continuing national asset.

3.      These obligations were not aspirational. The National Aeronautics and Space Act ("Space Act") requires NASA to "contribute materially to the expansion of human knowledge of phenomena in the atmosphere and space" and to "provide for the widest practicable and appropriate dissemination of information concerning its activities and the results thereof." 51 U.S.C. § 20102(d)(1), (3).

4.      Congress repeatedly reaffirmed these mandates through subsequent amendments, hearings, and post-accident investigations following the Apollo 1, Challenger, and Columbia disasters, recognizing that institutional memory is inseparable from safety. That the loss of hard-won lessons—often learned through failure and, at times, loss of life—creates unacceptable risk of repetition.

5.      Bolstering NASA's statutory commitment to preserve and protect records of historical and scientific significance is the Federal Records Act ("FRA") which establishes an exclusive legal regime governing the appraisal, preservation, and disposition of federal records, and vests the Archivist with non-delegable duties to safeguard records of "permanent" value.

6.    For decades, NASA has complied with these mandates through a stable framework of statutorily required records-retention schedules, binding agency policy, and institutional repositories—including the Goddard Library and the Database. Together, they functioned as foundational mechanisms for preserving and transmitting NASA's scientific, historical and technical knowledge.

7.    In or about September 2025, that framework was abruptly and inexplicably dismantled. NASA issued a radically revised NASA Records Retention Schedule (the "September 2025 NRRS"), approved by the Archivist, that stripped away longstanding preservation safeguards.[1] Almost simultaneously, NASA permanently closed the Goddard Library and the Database, initiating an opaque "60-day review," and pointing to a facilities master plan as justification for its actions that never contemplated such closures.

8.    These actions were taken in "reckless haste" toward an apparent arbitrary deadline, without transparency, burdening mission work and threatening strategic capabilities without reasoned explanation, without consideration of statutory constraints or reliance interests, and without compliance with mandatory procedures imposed by law.

9.    The closure of the Goddard Library and the Database is not a neutral facilities decision. It is final agency action with immediate legal consequences: depriving Plaintiffs of access to unique federal records; facilitating unlawful records disposition; undermining statutory preservation duties; and severing the intergenerational transmission of scientific knowledge Congress required NASA to maintain.

10.    Plaintiffs seek this Court's intervention to declare Defendants' actions unlawful; to set aside the September 2025 NRRS; to compel compliance with the FRA; and to vacate and

---

[1] https://nodis3.gsfc.nasa.gov/NPR_attachments/NRRS_1441.1_09032025.pdf

rescind the decision to permanently close the Goddard Library and the Database, thereby preventing irreversible harm to Plaintiffs, the agency, and the national record.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706.

12.    Plaintiffs seek relief under the Administrative Procedure Act ("APA"), which authorizes courts to set aside agency action that is arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of statutory authority, or taken without observance of required procedure. 5 U.S.C. § 706.

13.    Venue is proper in this District under 28 U.S.C. § 1391(e) because Defendants are federal officials and agencies headquartered in Washington, D.C., and a substantial portion of the actions challenged herein occurred in this District.

## PARTIES

14.    Plaintiff, DAVID WILLIAMS ("Williams"), is a planetary scientist with more than thirty-two (32) years of continuous service at NASA's Goddard Space Flight Center ("GSFC").

15.    During his tenure, Williams developed unique expertise regarding the Goddard Library and served as a subject-matter advisor to library personnel.

16.    Williams served as planetary and lunar science lead for the Database, the agency's original and foundational scientific data archive.

17.    The Database and the Goddard Library are functionally inseparable. Interpretation, correction, restoration, and completion of legacy datasets require physical access to mission-specific journals, technical manuals, and unique records housed only at the Goddard Library.

18.    NASA's permanent closure of both the Goddard Library and the Database has rendered Williams' ongoing scientific work impossible.

19.     Although recently retired, Williams had concrete plans to continue restoring legacy datasets through the Database—a practice NASA routinely encourages to preserve institutional knowledge.

20.     The closures have completely foreclosed these activities, causing direct, concrete, and ongoing injury.

21.     The closures have also prevented Williams from completing ongoing legacy-dataset restoration work that requires cross-referencing mission-specific documentation available only through the Goddard Library and the Database. Without access to those sources, Williams cannot verify provenance, correct metadata, or finalize the restoration steps necessary to render legacy datasets usable for current scientific work.

22.     Williams will suffer irreparable harm if records housed at the Goddard Library and the Database are destroyed, dispersed, or rendered inaccessible.

23.     Plaintiff, GIOVANNI DE AMICI ("De Amici"), has been employed at GSFC for nearly thirteen (13) years and specializes in satellite-based data analysis critical to weather forecasting, operational decision-making, and, in certain contexts, human spaceflight safety.

24.     Accurate interpretation of satellite measurements depends on verification of assumptions and methodologies contained in specialized and historical scientific literature.

25.     De Amici has relied extensively on the Goddard Library to access subscription-only journals, undigitized historical publications, and rare materials and records obtained through professional librarians.

26.     Closure of the Goddard Library has impaired his ability to independently verify scientific premises, increased the risk of analytical error, and undermined the reliability of mission-relevant research.

27.     Since the Goddard Library closure, De Amici has been unable to obtain specific subscription-only and archival sources he previously accessed to verify assumptions and methodologies underlying satellite-data interpretation. The loss of access has forced him either to proceed without verification or to delay work, increasing the risk of analytical error in mission-relevant analysis.

28.     These injuries are concrete, particularized, ongoing and irreparable—absent reopening of the Goddard Library and restoration of access to the materials on which he relies. De Amici's injuries exemplify the broader injuries suffered by similarly situated members of the Goddard Engineers, Scientists and Technicians Association, IFPTE Local 29 ("GESTA") whose work depends upon continued access to the Goddard Library and the Database.

29.     Plaintiff, GODDARD ENGINEERS, SCIENTISTS AND TECHNICIANS ASSOCIATION, IFPTE LOCAL 29 ("GESTA") is an association of engineers, scientists, technicians and other individuals employed at GSFC, organized to advance the professional, scientific and research interests of its members.

30.     De Amici is a member of GESTA.

31.     At least one GESTA member—De Amici—has suffered and continues to suffer concrete and particularized injury as described herein, including loss of access to specialized scientific literature, mission documentation, and scientific data necessary to perform assigned GSFC duties and increased risk of analytical error resulting from the permanent closure of the Goddard Library and the Database.

32.     The interests GESTA seeks to protect are germane to its purpose of advancing the professional and scientific work of GSFC engineers, scientists and technicians. Neither the claims

asserted, nor the declaratory and injunctive relief sought requires participation of individual members.

33.    GESTA therefore has associational standing to bring this action on behalf of its members.

34.    In addition to representational injury, GESTA has diverted organizational time and resources to addressing the closure of the Goddard Library and the Database, including (i) responding to member reports of lost access to specific Goddard Library subscriptions and Database functions needed for GSFC work; (ii) gathering information regarding the status and disposition of Goddard Library holdings and Database access; and (iii) expending staff and leadership time evaluating NASA's compliance with statutory preservation and access obligations.

35.    Defendant, NATIONAL AERONAUTICS AND SPACE ADMINISTRATION ("NASA"), is a federal agency headquartered in Washington, D.C.

36.    Defendant, JARED ISAACMAN, in his capacity as Administrator of NASA, is responsible for NASA's compliance with federal law, including the Space Act, FRA, National Archives and Records Administration ("NARA") regulations, and relevant mandatory NASA policy.

37.    Defendant, JAMES BYRON, upon information and belief, in his capacity as Acting Archivist of the United States (or the official currently performing the duties of the Archivist), is charged by statute with oversight of federal records management and with taking action to prevent the unlawful destruction of federal records.

## STATUTORY AND REGULATORY BACKGROUND

**The National Aeronautics and Space Act:**

38.    NASA's founding statute, the Space Act, requires NASA to prioritize the accumulation and dissemination of institutional knowledge generated by the nation's space

program, including by directing NASA to "contribute materially to the expansion of human knowledge of phenomena in the atmosphere and space" and to "provide for the widest practicable and appropriate dissemination of information concerning its activities and the results thereof." 51 U.S.C. § 20102(d)(1), (3).

39.    Congress has repeatedly reaffirmed these mandates through subsequent amendments, oversight, and investigations into spaceflight disasters, reflecting a consistent understanding that preservation and dissemination of institutional knowledge are integral to NASA's mission, scientific integrity, and safety obligations.

**The Federal Records Act:**

40.    The FRA, 44 U.S.C. §§ 21, 29, 31, and 33, establishes a comprehensive statutory scheme governing the creation, management, preservation, and disposition of federal records.

41.    Federal records include documentary materials made or received by an agency in connection with public business and preserved or appropriate for preservation as evidence of the Government's organization, functions, policies, decisions, operations, or because of their informational value. 44 U.S.C. § 3301(a).

42.    The FRA provides the exclusive means by which federal records may be disposed of or destroyed. 44 U.S.C. §§ 3314, 3303–3303a.

**Records Retention Schedules Under the Federal Records Act:**

43.    Under the FRA, federal records may be disposed of or destroyed only pursuant to an approved records retention schedule. A records retention schedule is a legally binding instrument that identifies categories of federal records and specifies whether such records are "temporary" or "permanent," as well as the conditions and timing under which any disposal may occur.

44.    The FRA requires each federal agency to submit proposed records retention schedules to the Archivist for review and approval. 44 U.S.C. §§ 3303, 3303a. Until such approval is granted, records covered by a proposed schedule may not be destroyed or disposed of.

45.    The Archivist's approval of a records retention schedule constitutes a determination, on behalf of the United States, that records designated as "temporary" lack sufficient administrative, legal, research, or other value to warrant continued preservation, and that records designated as "permanent" possess such value and must be preserved indefinitely. 44 U.S.C. §§ 2905(a), 3303a(a).

46.    Once approved by the Archivist, a records retention schedule carries the force of law and serves as the exclusive authorization for an agency to destroy or dispose of federal records. Any disposal of records outside the scope of an approved schedule, or pursuant to a schedule approved in violation of the FRA, constitutes unlawful destruction of federal records. *See Armstrong v. Bush*, 924 F.2d 282, 290–91 (D.C. Cir. 1991); 36 C.F.R. §§ 1225.10(a), 1225.12(a).

47.    Approval and implementation of the September 2025 NRRS consummated the decision-making process regarding disposition authority for covered records and carries legal consequences by authorizing disposal and destruction.

**The Archivist's Non-Delegable Duties:**

48.    The Archivist has an affirmative, non-discretionary duty to provide for the protection, care, and preservation of records determined to have sufficient historical or other value to warrant continued preservation. 44 U.S.C. § 2905(a).

49.    Prior to authorizing destruction, the Archivist must *independently* determine that records lack sufficient administrative, legal, research, or other value and must provide public notice and an opportunity for comment. 44 U.S.C. § 3303a(a).

50.    These duties cannot be delegated to the originating agency.

**Agency Obligations:**

51.    Agency heads must establish safeguards against the removal or loss of records and must implement the Archivist's standards and guidance. 44 U.S.C. §§ 3102, 3105.

52.    Under binding rules set by NARA, records determined to have "permanent" value must be preserved and protected indefinitely. 36 C.F.R. §§ 1220–1228.

**NASA Binding Policy and Procedure:**

53.    NASA Policy Directive ("NPD") 1440.6I[2] and NASA Procedural Requirement ("NPR") 1441.1E[3] are binding on all NASA employees and mandate that NASA identify, preserve, and protect "permanent" and unscheduled records and prohibit destruction of any records without an approved retention schedule.

54.    NPD 1440.6I and NPR 1441.1E are binding, mandatory directives that govern NASA's records-management practices and implement the requirements of the FRA. NASA may not depart from the requirements of these directives absent lawful amendments or reasoned explanation. NASA policy as outlined in NPD 1440.6I makes it clear that a record's designation as "permanent" is tied not merely to administrative utility, but to a record's potential historical and scientific significance. Agency action that conflicts with binding NASA policy, without lawful amendment or reasoned explanation, is arbitrary, capricious, and not in accordance with law.

## STATEMENT OF FACTS

55.    The Goddard Library is NASA's largest research library, housing approximately 100,000 volumes and unique records and materials dating back to NASA's founding in 1958.

---

[2] https://nodis3.gsfc.nasa.gov/displayDir.cfm?Internal_ID=N_PD_1440_006I_&page_name=main

[3] https://nodis3.gsfc.nasa.gov/displayDir.cfm?Internal_ID=N_PR_1441_001E_&page_name=main

56.    Following closures at other NASA facilities, records of historical and scientific significance, including those requiring "permanent" status under the FRA, were consolidated at the Goddard Library, many of which remain undigitized and unavailable elsewhere.

57.    The Database functions as NASA's original scientific data archive and depends on records and materials at Goddard Library for interpretation and usability of raw data.

58.    In or about October 2012, NASA GSFC entered into a Settlement Agreement with GESTA regarding continued maintenance of centralized GSFC library resources at the Greenbelt campus (the "2012 Settlement Agreement").[4]

59.    In the 2012 Settlement Agreement, NASA GSFC committed, among other things, to:

   i.   "Maintain a centralized collection of GSFC physical library resources (i.e. hard copy journals and books) at the Greenbelt campus, Building 21 [the Goddard Library] …." (2012 Settlement Agreement ¶ 3).
   ii.  Identify funding and re-open the GSFC physical library…with defined open hours intended to preserve access comparable to prior practice. (Id. ¶¶ 2, 6–7).
   iii. Provide advance notice to GESTA regarding physical library operations and, for future proposed changes to the library, notify GESTA and afford an opportunity to elect consultation or bargaining in accordance with the Collective Bargaining Agreement. (Id. ¶¶ 6–8).

60.    In or about September 2025, NASA implemented the September 2025 NRRS that materially departed from prior record retention schedules. Among its many changes were:

   i.   Eliminating operational safeguards for identifying historically significant records during mass disposition events;
   ii.  Reclassifying categories of records with continuing research value as "temporary;" and
   iii. Vesting NASA with discretion to determine for itself whether records warrant continued preservation.

---

[4] https://www.gesta-goddard.org/uploads/4/0/5/6/40565251/librarynegosettlementagree04oct2012.pdf

61.    The September 2025 NRRS was approved by the Archivist despite these departures.

62.    In or about late 2025, NASA shut down access to the Database without reason or explanation. NASA has treated the Database shutdown as permanent, with no announced criteria or process for restoration and no administrative avenue for appeal or review.

63.    The Database shutdown was implemented through the cessation of normal access pathways used by agency personnel and affiliated researchers, including restrictions that prevent Plaintiffs from performing routine Database functions such as verifying and correcting metadata, cross-checking dataset provenance against mission documentation, and completing restoration of legacy datasets whose interpretation depends on contemporaneous journals and mission-specific technical manuals available through the Goddard Library. NASA has provided no public criteria, timeline, or process for restoring access, and no alternative mechanism exists that would permit Plaintiffs to perform this work without access to the Database and the Goddard Library's unique holdings.

64.    In or about December 2025, NASA abruptly paused operations at the Goddard Library and announced a "60-day review" of its holdings.[5]

65.    At the conclusion of the "60-day review," NASA has publicly stated that records kept at the Goddard Library, including those potentially requiring "permanent" status under the FRA, NASA policy and NARA-approved guidelines, are subject to disposal and destruction.[6]

66.    On or about January 2, 2026, NASA permanently closed the Goddard Library, citing a facilities master plan released in or about 2022 ("2022 Master Plan")[7] that did not

---

[5] https://x.com/NASAAdmin/status/2007210690587557905
[6] https://www.nytimes.com/2025/12/31/climate/nasa-goddard-library-closing.html
[7] https://www.nasa.gov/wp-content/uploads/2019/12/gsfc_master_plan_digest_feb2022_lo_res_website.pdf?emrc=e0f7a2

contemplate closure or mass disposition of records.[8]

67.    Public statements by GESTA dispute NASA's characterization of the action as a long-planned "consolidation," noting that the 2022 Master Plan did not call for a library closure and that Building 21 (the building where the Goddard Library is located) was scheduled for renovation rather than elimination.

68.    NASA provided no reasoned explanation addressing statutory preservation obligations, reliance interests, alternatives, or safety implications. This absence of explanation is especially significant given that the September 2025 NRRS removed oversight, transparency, and accountability safeguards prevalent in previous NASA record retention schedules.

69.    NASA's permanent closure of the Goddard Library is not a neutral facilities management decision but an operative mechanism by which NASA is implementing the September 2025 NRRS and effectuating the unlawful review, reclassification, and threatened disposal of federal records. The closure decision was functionally intertwined with and dependent upon implementation of the September 2025 NRRS, such that the two actions cannot be meaningfully separated.

70.    By invoking the 2022 Master Plan as justification for the Goddard Library's closure while simultaneously implementing a radically revised records retention regime, NASA failed to provide a reasoned explanation for its actions and failed to consider the preservation obligations imposed by the FRA, its own policy directive and NARA-approved guidelines.

## REVIEWABILITY

71.    Although NASA may characterize the closure of the Goddard Library and the Database as an internal facilities or program-administration matter, the challenged closure

---

[8] https://x.com/NASAAdmin/status/2007210687685337266

decisions are not "committed to agency discretion by law" within the meaning of 5 U.S.C. § 701(a)(2). The Space Act, the FRA, NARA's implementing regulations, and NASA's binding policy directives provide meaningful standards governing NASA's preservation and dissemination obligations and its handling of records of historical and scientific value.

72.    Because the closure decisions directly and foreseeably affect NASA's ability to comply with mandatory statutory and regulatory requirements—including obligations to preserve federal records, prevent unlawful destruction or loss, and ensure appropriate dissemination and access—the decisions are subject to judicial review under the APA and may be set aside if arbitrary, capricious, abuses of discretion, contrary to law, in excess of authority, or taken without observance of required procedure.

### STANDING AND INJURY

73.    Plaintiffs have suffered and will imminently suffer concrete and particularized injuries, including loss of access to unique federal records and scientific data necessary for their ongoing work; impairment of their ability to verify, reproduce, and complete mission-relevant analyses; and increased risk of scientific error and safety-critical analytical failure resulting from the elimination of access to the materials and systems on which their research depends.

74.    Plaintiffs have also suffered concrete, access-based injury because the permanent closures have deprived them of access to unique, specialized, and in many instances undigitized records and materials that Plaintiffs previously accessed and relied upon through the Goddard Library and the Database and that are unavailable through alternative repositories or reasonable substitute means.

75.    GESTA has associational standing because at least one identified member—De Amici—has suffered and will continue to suffer the injuries described herein, the interests at stake

are germane to GESTA's purpose, and the declaratory and injunctive relief sought does not require individual participation of additional members.

76.     Plaintiffs have suffered procedural injury because Defendants' actions have deprived Plaintiffs of statutory and regulatory protections designed to prevent unlawful loss of federal records, including the Archivist's independent appraisal obligations, public notice and opportunity for comment requirements applicable to destruction authorizations, and mandatory duties to take action to prevent unlawful destruction or removal of records. The denial of these procedures has increased the risk of concrete harm to Plaintiffs' professional work and their continued access to the records and materials they require, a risk that would be reduced if those procedures were properly observed.

77.     Plaintiffs' injuries are imminent. NASA has publicly stated that records and materials housed at the Goddard Library are subject to disposal and destruction following a truncated "60-day review," while simultaneously maintaining the closures that prevent Plaintiffs from accessing and identifying the specific records and materials at risk. Once records are destroyed, reclassified and dispersed, or otherwise irreversibly separated from their operational and scientific context, the injury cannot be undone.

78.     Plaintiffs' injuries are fairly traceable to Defendants' actions and would be redressed by the relief sought. Vacatur of the September 2025 NRRS, injunctive relief preventing destruction or dispersal of records, and vacatur of the closure decisions—with appropriate remand for lawful decision-making—would restore access, reduce imminent risk of irreversible loss, and compel compliance with statutory preservation and dissemination requirements.

## CAUSES OF ACTION

### COUNT I
**APA – Arbitrary and Capricious, Abuse of Discretion Agency Action
5 U.S.C. § 706(2)(A)**

79.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

80.    The September 2025 NRRS constitutes a material reversal of NASA's longstanding records-preservation framework found in prior record retention schedules, which required content-based appraisal of records, segregation of historically significant materials, and meaningful, statutorily required oversight by the Archivist.

81.    The September 2025 NRRS eliminated or materially diluted mandatory safeguards governing the identification and preservation of historically significant and research-valuable records during mass disposition events, including library closures.

82.    NASA failed to acknowledge that the September 2025 NRRS represented a departure from prior NASA retention schedules and policy directives, failed to explain why longstanding preservation safeguards were no longer necessary, and failed to provide a reasoned explanation for vesting the agency itself with discretion to determine whether records warrant continued preservation.

83.    NASA further failed to consider important aspects of the problem, including the heightened risk of unlawful destruction posed by contemporaneous facility closures at GSFC and the reliance interests of employees, contractors, researchers, historians, and the public who depended on continued access to the Goddard Library's holdings.

84.    The Archivist, in approving the September 2025 NRRS, failed to ensure that the revised schedule complied with the FRA's preservation mandate and failed to account for the

foreseeable consequences of eliminating preservation safeguards at the precise moment NASA was initiating mass records review and library closure.

85.    In approving the September 2025 NRRS, the Archivist abused his discretion by failing to exercise the independent judgment required by the FRA, approving a records-retention scheme that on its face relinquished his statutory responsibility to determine whether records warrant continued preservation and to safeguard records of "permanent" value.

86.    Furthermore, the September 2025 NRRS is on its face arbitrary and capricious and not in accordance with law because it directly contradicts binding NPD 1440.6I without acknowledging or explaining the conflict.

87.    Defendants' approval and implementation of the September 2025 NRRS therefore constitute agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law and must be set aside pursuant to 5 U.S.C. § 706(2)(A).

## COUNT II
### APA – Action in Excess of Statutory Authority
### 5  U.S.C. § 706(2)(C)

88.    Plaintiffs re-allege and incorporate all preceding paragraphs.

89.    The FRA vests the Archivist with the non-delegable responsibility to determine whether federal records possess sufficient historical, research, or other value to warrant continued preservation and to provide for their protection once such value exists. 44 U.S.C. §§ 2905(a), 3303a(a).

90.    The FRA strictly limits the circumstances under which federal records may be destroyed or disposed of and establishes exclusive procedures governing appraisal, approval, and public notice. 44 U.S.C. §§ 3314, 3303–3303a.

91.     The September 2025 NRRS unlawfully authorizes NASA to determine, in the first instance and without independent appraisal by the Archivist, whether records warrant continued preservation, and to conduct rapid review and disposition of records without compliance with the FRA's exclusive procedures.

92.     In approving the September 2025 NRRS, the Archivist exceeded his statutory authority by authorizing a records-retention regime that abdicates duties Congress expressly assigned to him and permits destruction or disposition of records without the determinations required by law.

93.     In implementing the September 2025 NRRS to review, reclassify, and threaten disposal of records housed at the Goddard Library, NASA acted in excess of its statutory authority and contrary to the FRA.

94.     Defendants' actions must therefore be set aside pursuant to 5 U.S.C. § 706(2)(C).

## COUNT III
### APA – Unlawful Failure to Act
### 5 U.S.C. § 706(1)

95.     Plaintiffs re-allege and incorporate all preceding paragraphs.

96.     The FRA imposes a mandatory duty on the Archivist to take action to prevent the unlawful removal, destruction, or loss of federal records when such destruction is occurring or imminently threatened. 44 U.S.C. §§ 2905(a), 3106. Under 44 U.S.C. § 3106, when the Archivist becomes aware of actual, impending, or threatened unlawful destruction or removal of records, the Archivist must initiate action through the Attorney General for the recovery and protection of such records.

97.     Beginning no later than September 2025, the Archivist was aware, or reasonably should have been aware, that the September 2025 NRRS eliminated longstanding safeguards

governing the identification and preservation of historically significant records and was being implemented contemporaneously with the closure of the Goddard Library and a rapid, mass review of its holdings.

98.    The Archivist was on notice of these risks both through approval of the September 2025 NRRS itself and through NASA's public announcements regarding the closure of the Goddard Library and the "60-day review" process.

99.    The Archivist was further on notice that records housed at the Goddard Library include records of unique historical and research value and that closure of the library posed an imminent risk of unlawful destruction, dispersal, or irreversible loss of such records.

100.    Despite this knowledge, the Archivist failed to take any action to prevent the threatened unlawful destruction or removal of federal records, including but not limited to suspending implementation of the September 2025 NRRS, requiring additional appraisal or safeguards, or referring the matter to the Attorney General as required by statute.

101.    The Archivist's failure to act constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of 5 U.S.C. § 706(1).

102.    Plaintiffs are entitled to an order compelling the Archivist to perform his mandatory statutory duties to protect records of "permanent" value and to take action to prevent their unlawful destruction.

## COUNT IV
### APA - Action Taken Without Observance of Procedure Required by Law
### 5 U.S.C. § 706(2)(D)

103.    Plaintiffs re-allege and incorporate all preceding paragraphs.

104.    The FRA establishes mandatory procedures governing the appraisal, approval, and disposal of federal records, including requirements for independent appraisal by the Archivist,

public notice, and an opportunity for comment prior to authorization of destruction. 44 U.S.C. §§ 3303, 3303a.

105.    NARA's implementing regulations further require content-based appraisal of records, preservation of records with permanent historical or research value, and procedural safeguards during mass disposition events. 36 C.F.R. §§ 1220–1228.

106.    NPR 1441.1E imposes additional mandatory procedures requiring identification, segregation, and protection of historically significant and permanent records and prohibit destruction of records absent compliance with approved schedules and safeguards.

107.    Defendants approved and implemented the September 2025 NRRS without observing these required procedures, including by authorizing discretionary internal agency review of records without independent appraisal by the Archivist, without providing the Federal Register notice and opportunity for comment required by 44 U.S.C. § 3303a and applicable NARA procedures, or without otherwise complying with those procedures.

108.    Defendants further failed to observe required procedures triggered by the threatened unlawful destruction of federal records, including the Archivist's duty to act under 44 U.S.C. § 3106. Defendants' failure to comply with mandatory procedures imposed by NPR 1441.1E independently renders the September 2025 NRRS unlawful.

109.    Because the September 2025 NRRS was approved and implemented without observance of procedure required by law, Defendants' actions are unlawful and must be set aside pursuant to 5 U.S.C. § 706(2)(D).

### COUNT V
**APA – Arbitrary and Capricious Agency Action**
**(Unlawful Closure of the Goddard Library and Database)**
**5 U.S.C. § 706(2)(A)**

110.    Plaintiffs re-allege and incorporate all preceding paragraphs.

111.    The 2012 Settlement Agreement reflected NASA's formal recognition that centralized, physical library resources at GSFC are operationally significant. NASA committed to "maintain a centralized collection of GSFC physical library resources … at the Greenbelt campus, Building 21 [the Goddard Library]," and to provide notice and an opportunity for consultation or bargaining regarding future library changes.

112.    The decision to permanently shutter the Goddard Library and related archival functions represents a departure from NASA's prior institutional position and settled practice embodied in the 2012 Settlement Agreement. Plaintiffs do not seek enforcement of the 2012 Settlement Agreement as a labor contract; rather, the 2012 Settlement Agreement is relevant evidence of NASA's prior institutional position and settled practices, the reliance interests it generated, and the agency's failure to provide a reasoned explanation for departure from those commitments.

113.    Upon information and belief, NASA did not:

    i.   Acknowledge the existence of the 2012 Settlement Agreement;
    ii.   Analyze whether the closure was consistent with the commitments reflected therein;
    iii.   Consider the serious reliance interests generated by NASA's prior commitments to maintain a centralized physical collection and to preserve access to physical library resources at GSFC; or
    iv.   Provide a reasoned explanation for abandoning those settled commitments in connection with a mass disposition event and permanent closure.

114.    Agency action that departs from prior policy or settled commitments reflected in prior agency action must be accompanied by a reasoned explanation and consideration of serious reliance interests.

115.    Defendants' failure to consider or explain the abandonment of prior commitments regarding the Goddard Library renders the closure decision arbitrary and capricious under 5 U.S.C. § 706(2)(A).

116.    Defendants' action is further arbitrary and capricious because it reflects a failure to consider an important aspect of the problem—namely, the institutional, operational, and statutory interests previously recognized by NASA itself in committing to maintain centralized physical library resources.

117.    NASA's decision to permanently close the Goddard Library and the Database constitutes final agency action within the meaning of the APA.

118.    The decision to close the Goddard Library and the Database marks the consummation of NASA's decision-making process with respect to those facilities and programs. NASA has publicly announced the closures as permanent, has ceased operations, and has provided no indication that further internal review, reconsideration, or administrative process remains available.

119.    The closure decisions therefore constitute final agency action because they mark the consummation of NASA's decision-making process and determine rights and obligations and give rise to legal consequences, including the loss of access to federal records and the impairment of Plaintiffs' ability to perform ongoing scientific work.

120.    The closures have immediate and concrete legal consequences, including but not limited to:

    i.    Depriving Plaintiffs and the public of access to unique federal records and scientific data;
    ii.    Impairing Plaintiffs' ability to conduct ongoing and future research relied upon in the performance of professional and statutory functions;
    iii.    Facilitating and accelerating the review, reclassification, dispersal, and threatened destruction of federal records governed by the FRA; and

iv. Rendering compliance with statutory and regulatory preservation obligations impracticable, if not impossible.

121.    Although NASA has characterized the closure of the Goddard Library as a facilities management decision, the closure is not a neutral or discretionary housekeeping measure. It is an operative agency action that directly affects NASA's ability to comply with mandatory statutory obligations governing records preservation, dissemination of knowledge, and institutional continuity.

122.    In permanently closing the Goddard Library and the Database, NASA failed to provide a reasoned explanation for its decision. Specifically, NASA failed to articulate a rational connection between the facts before the agency and the choice made and failed to explain how the closures are consistent with the agency's statutory mission and preservation obligations.

123.    NASA relied on the 2022 Master Plan as justification for the closures, despite the fact that the 2022 Master Plan did not contemplate the permanent closure of the Goddard Library, the cessation of Database operations, or mass disposition of historically and scientifically significant records.

124.    NASA failed to acknowledge that the closures represented a departure from decades of settled agency practice, under which the Goddard Library and the Database functioned as central institutional repositories supporting NASA's statutory mission, scientific integrity, and intergenerational transfer of knowledge.

125.    NASA further failed to consider important aspects of the problem, including:

i. The mandatory preservation requirements imposed by the FRA and NARA regulations;
ii. The role of the Goddard Library and the Database in enabling compliance with those requirements;

    iii.  The reliance interests of agency scientists, contractors, retirees, researchers, historians, and the public who depend on continued access to these resources;

    iv.  The increased risk of scientific error, data degradation, and loss of institutional memory resulting from closure; and

    v.  The safety implications associated with the loss of access to historical mission data, methodologies, and lessons learned.

126.    NASA failed to consider reasonable alternatives to permanent closure, including but not limited to phased operations, partial access, staffing adjustments, digitization initiatives, or continued operation pending completion of lawful records appraisal and preservation processes.

127.    The closures are inconsistent with NASA's statutory obligations under the Space Act, which requires NASA to contribute materially to the expansion of human knowledge and to provide for the widest practicable dissemination of information concerning its activities and results.

128.    The closures are also inconsistent with binding NPD 1440.6I, which mandates the identification, preservation, and protection of permanent and historically significant records and presupposes the existence of institutional mechanisms—such as research libraries and data archives—necessary to carry out those mandates.

129.    NASA failed to acknowledge or explain the conflict between the permanent closure of the Goddard Library and the Database and its obligations under the Space Act, the FRA, NARA regulations, and binding NASA policy.

130.    By permanently closing the Goddard Library and the Database without reasoned explanation, without consideration of statutory constraints, and without addressing reliance interests or alternatives, NASA acted in a manner that is arbitrary, capricious, an abuse of discretion, and not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A).

131.    Because the closures facilitate and exacerbate the risk of unlawful disposition and destruction of federal records, and because they independently conflict with NASA's statutory mission and preservation obligations, the decisions to close the Goddard Library and the Database must be vacated and set aside.

132.    Plaintiffs are entitled to declaratory and injunctive relief requiring NASA to rescind the closure decisions, reopen the Goddard Library and the Database, and maintain their operation pending completion of a lawful, reasoned decision-making process consistent with statutory and regulatory requirements.

## COUNT VI
### Ultra Vires Agency Action

133.    Plaintiffs re-allege and incorporate all preceding paragraphs.

134.    Federal agencies possess only the authority granted to them by Congress, and actions taken beyond that authority are ultra vires and subject to injunctive relief.

135.    The FRA prohibits destruction or disposition of federal records except pursuant to the procedures and determinations specified by statute. 44 U.S.C. §§ 3314, 3303–3303a.

136.    The Archivist is statutorily required to independently determine whether records possess sufficient historical, research, or other value to warrant continued preservation and to protect such records once that value exists. 44 U.S.C. § 2905(a).

137.    By approving the September 2025 NRRS, which authorizes NASA to make unilateral determinations regarding the preservation or disposal of records and eliminates mandatory safeguards for identifying historically significant materials, the Archivist acted in excess of the authority granted to him by Congress.

138.    By conducting a rapid, opaque review of records housed at the Goddard Library and threatening their disposal pursuant to the September 2025 NRRS, NASA has acted without statutory authority and in violation of the FRA's exclusive disposition scheme.

139.    Because Defendants' actions exceed the authority granted by Congress, they are ultra vires and must be enjoined.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

a.  Declare Defendants' actions unlawful;

b.  Vacate and set aside the September 2025 NRRS, and remand to Defendants for further action consistent with the Court's order and applicable law;

c.  Enjoin destruction, disposal, dispersal, or other irreversible separation of records and materials housed at the Goddard Library and/or necessary to interpret or preserve the Database;

d.  Vacate and rescind NASA's decision to permanently close the Goddard Library and the Database, and remand to NASA for a lawful, reasoned decision-making process consistent with statutory and regulatory requirements;

e.  Order NASA to reopen and maintain the Goddard Library and the Database pending completion of lawful compliance and further agency action on remand;

f.  Compel Defendants to comply with the FRA and NARA's implementing regulations, including requirements governing appraisal, preservation, and protection of records of permanent historical, scientific, or other value;

g.  Award costs and attorneys' fees as permitted by law; and

h.  Grant such other and further relief as the Court deems just and proper.

**DATED: February 19, 2026**                    **Respectfully Submitted,**

<u>/s/ *Zachary M. Weil*</u>
Zachary M. Weil (DC Bar No. Pending)
Fellowship Law Group PLLC
2429 Nicollet Ave. Floor 2
Minneapolis, Minnesota 55404
(612) 249-8613 Ext. 702
zweil@fellowship.law
molszewska@fellowship.law

<u>/s/ *Ronald P. Weil*</u>
Ronald P. Weil (FL Bar No. 169966) *
The Weil Law Firm P.A.
333 SE 2nd Ave. Suite 2000
Miami, Florida 33131
(305) 372-5352
rweil@weillawfirm.net

*Motion to appear *pro hac vice* forthcoming

***Counsel for Plaintiffs***