**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID WILLIAMS, | Case No: 1:26-cv-00564 |
| GIOVANNI DE AMICI and | Judge: Christopher R. Cooper |
| GODDARD ENGINEERS, SCIENTISTS AND TECHNICIANS ASSOCIATION, IFPTE LOCAL 29; | **PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| *Plaintiffs,* | |
| v. | |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; | |
| JARED ISAACMAN in his capacity as Administrator of the National Aeronautics and Space Administration; | |
| JAMES BYRON, upon information and belief, in his official capacity as Acting Archivist of the United States, or the official performing the duties of the Archivist; | |
| *Defendants*. | |

Plaintiffs DAVID WILLIAMS ("Dr. Williams"), GIOVANNI DE AMICI (" Dr. De Amici") and the GODDARD ENGINEERS, SCIENTISTS AND TECHNICIANS ASSOCIATION, IFPTE LOCAL 29 ("GESTA") (collectively "Plaintiffs") respectfully move this Court for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1, preserving the status quo and preventing imminent, irreversible harm while this Court adjudicates Plaintiffs' claims on the merits.

Specifically, Plaintiffs request an order that:

(1) Temporarily restrains and preliminarily enjoins the National Aeronautics and Space

Administration ("NASA"), its officers, agents, employees, and contractors from implementing or carrying out any disposition, destruction, shredding, dispersal, reclassification, transfer, commingling, or other irreversible alteration of federal records and research materials associated with NASA's Goddard Information and Collaboration Center in Greenbelt, Maryland (the "Goddard Library") and the NASA Space Science Data Coordinated Archive (the "Database"), including any actions taken pursuant to NASA's September 2025 NASA Records Retention Schedule ("September 2025 NRRS") and the publicly announced "60-day review" process;

(2) Requires NASA and the acting Archivist of the United States ("Archivist") (collectively "Defendants") to maintain and preserve, under litigation hold, the provenance and chain-of-custody of any materials already boxed, moved, staged, or processed, and to produce an interim inventory log identifying (at minimum):

    (a) what categories of records and materials were removed or staged for removal since December 1, 2025,

    (b) where those materials are currently stored, and

    (c) whether any records and materials are designated for shredding/destruction or transfer off-site;

(3) Temporarily restrains and preliminarily enjoins NASA from enforcing or implementing the permanent closures of the Goddard Library and the Database to the extent necessary to provide an interim, controlled access process for Plaintiffs (or their designees) to identify and obtain specific materials necessary for ongoing work and for litigation purposes—whether through limited in-person access, a prompt retrieval request system with guaranteed timelines, or other minimally burdensome means;

(4) Compels Defendants to take the nondiscretionary enforcement steps required by the Federal Records Act ("FRA") under 44 U.S.C. § 3106 to protect records from actual, impending, or threatened unlawful destruction or removal, including referral to the Attorney General and notification to Congress.

This Motion is based on Plaintiffs' Complaint for Declaratory and Injunctive Relief ("Compl." [D.E. 1]), the Declaration of Dr. David Williams ("Williams Decl."), the Declaration of Dr. Giovanni De Amici ("De Amici Decl."), the Declaration of the President of the Goddard Engineers, Scientists and Technicians Association/IFPTE Local 29 ("GESTA Decl."), the memorandum of points and authorities below, and the entire record. The supporting declarations will be filed concurrently with this Motion.

<strong>MEMORANDUM OF POINTS AND AUTHORITIES</strong>

## I.    INTRODUCTION

This case concerns an imminent threat: the irreversible loss of federal records and unique materials amassed by NASA over decades and entrusted to the Goddard Library and Database for preservation, access, mission continuity, and safety. For reasons that remain unexplained, Defendants have (1) permanently shuttered the Goddard Library—NASA's largest research library—along with the Database, a foundational scientific data archive; and (2) implemented the September 2025 NRRS that removed longstanding safeguards requiring meaningful appraisal, segregation of historically significant materials, and effective oversight during mass disposition events such as the closure of a major federal research repository. (Compl. ¶¶ 60–66).

Plaintiffs' declarations and exhibits establish a substantial likelihood that federal records and unique materials—potentially a massive volume which remain undigitized and unavailable anywhere else—are being routed for disposition, dispersal, or destruction under an opaque "60-day

review" process. (Compl. ¶¶ 7, 64-65; GESTA Decl. ¶¶ 9-14). Many of the materials are crucial to the work of employees at NASA's Goddard Space Flight Center ("GSFC") like Dr. De Amici whose inability to access them compromises work crucial to satellite operations and human spaceflight. (De Amici Decl. ¶ 8-9). Destroying or dispersing these materials increases the risk of analytical error and undermines NASA's ability to prevent accidents and act responsibly in human spaceflight and other high-risk missions. (De Amici Decl. ¶ 11; GESTA Decl. ¶¶ 31-32). Once these unique materials are discarded, they cannot be restored; the harm is immediate and irreparable. (GESTA Decl. ¶ 33; Williams Decl. ¶ 14).

Plaintiffs do not rely on speculation. Photographs taken inside the Goddard Library by Dr. De Amici on or about February 6, 2026, document that packing and removal operations are already underway: "large quantities of boxed materials and staging supplies are present; records-storage boxes appear staged for movement; and signage referencing "shredding" appears near staged materials—evidence that the status quo is actively being dismantled." (De Amici Decl. ¶¶ 12-13, Exhibit A).



*Figure 1 Photograph of the Goddard Library interior taken by Dr. De Amici, February 6, 2026 (De Amici Decl. ¶¶ 12-13, Exhibit A).*



*Figure 2 Photograph of the Goddard Library interior taken by Dr. De Amici, February 6, 2026 (De Amici Decl. ¶¶ 12-13, Exhibit A).*

Emergency relief is warranted. Once federal records and unique materials are destroyed, dispersed, stripped of provenance, or routed through shredding/disposition processes, no later merits ruling can restore them. (GESTA Decl. ¶ 33). Plaintiffs therefore seek limited, time-bound relief designed to preserve the Court's ability to grant meaningful final relief.

## II.    RELEVANT BACKGROUND

### A.  <u>The Goddard Library and the Database</u>

The Goddard Library and Database reflect the core of institutional knowledge amassed by NASA since its founding as part of its mission to "contribute materially to the expansion of human knowledge of phenomena in the atmosphere and space." (Compl. ¶ 38 (quoting 51 U.S.C. § 20102(d)(1), 55-56). Many of the records and materials housed there are irreplaceable historical, scientific and technical records aggregated from various NASA facilities, vehicle development and testing, and prior missions. (Compl. ¶¶ 55–56; GESTA Decl. ¶¶ 4-6). Their loss would amount to tossing invaluable knowledge meticulously gathered over decades into the waste bin, impairing

NASA's ability to learn from past failures and successes, including those that have had life-and-death consequences in the history of human spaceflight. (GESTA Decl. ¶¶ 6, 31-35).

### B. Challenged Agency Actions

In or about December 2025, NASA abruptly halted operations at the Goddard Library, announced an opaque "60-day review" of its holdings, and then permanently shuttered the library effective on or about January 2, 2026, having already shuttered the Database. (Compl. ¶¶ 62–66; GESTA Decl. ¶¶ 9-12). In parallel, NASA implemented the September 2025 NRRS which removed long-standing safeguards to preserve and protect records and materials of historical value in NASA's possession. (Compl. ¶¶ 60–61).

### C. Imminent Risk of Irreversible Loss

NASA publicly indicated that at the conclusion of its "60-day review," records and other materials at the Goddard Library would be subject to disposition and/or destruction. (Compl. ¶ 65; GESTA Decl. ¶ 15). Dr. De Amici's photographs of the Goddard Library interior confirm a worst-case-scenario: that many materials housed at the library have already been boxed, staged, and removed. (De Amici Decl. ¶¶ 12-13, Exhibit A). Plaintiffs' declarations confirm that the closures have disrupted ongoing work, that packing and removal operations are already underway, and that further disposition or destruction will cause permanent, unrecoverable loss. (De Amici Decl. ¶¶ 12-14, Exhibit A; GESTA Decl. ¶ 22; Williams Decl. ¶¶ 11).

## III.    LEGAL STANDARD

A TRO and PI are warranted upon demonstration of:

    (1) A likelihood of success on the merits;
    (2) irreparable harm in the absence of preliminary relief;
    (3) that the balance of equities tips in the movant's favor; and
    (4) that an injunction is in the public interest.

*See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (citing *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 8 (D.D.C. 2022)).

While all factors matter, <u>irreparable harm is central</u>. *See Am. Oversight v. Hegseth*, 788 F. Supp. 3d 14, 21 (D.D.C. 2025) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). In FRA cases, courts find irreparable injury where there is a meaningful possibility that the information sought will be deleted or destroyed before judicial review is complete. *Am. Oversight*, 788 F. Supp. 3d at 21 (citing *Am. First Legal Found. v. Becerra*, No. 24-1092 (RC), 2024 WL 3741402, at *14 (D.D.C. Aug. 9, 2024); *Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*, 565 F. Supp. 2d 23, 29–30 (D.D.C. 2008)).

## IV.    ARGUMENT

### A.  <u>Plaintiffs Are Likely to Succeed on the Merits</u>

Plaintiffs challenge two categories of agency action: (1) final agency action reviewable under the APA (namely the implementation of the September 2025 NRRS and the Goddard Library and Database closures) as arbitrary and capricious, contrary to law, abuses of discretion, procedurally defective, and in excess of statutory authority (Compl. Counts I, II, IV, V, VI); and (2) APA action compelling performance of nondiscretionary duties to prevent unlawful destruction or removal of federal records in NASA's possession (Compl. Count III).

### 1.  The September 2025 NRRS is reviewable final agency action and is likely unlawful under the APA and FRA (Counts I, II, IV, VI).

#### a.   Reviewability:

Agency action is typically committed to agency discretion by law if the statute authorizing agency action is drawn in terms so broad that there is no law to apply. *See Armstrong v. Bush (Armstrong I),* 924 F.2d 282, 284, 288 U.S. App. D.C. 38 (D.C. Cir. 1991). That said, the FRA

clearly provides detailed standards for materials agencies must retain. *Id.* It also mandates that the head of each agency shall establish and maintain a records management program and shall establish safeguards against the removal or loss of records, *Id.,* (citing 44 U.S.C. §§ 3102, 3105).

The D.C. Circuit has determined a private right of action under the APA when an agency violates the FRA by "fail[ing] to employ adequate recordkeeping guidelines and directives," or "where the agency head or Archivist refuses to seek the initiation of an enforcement action..." *Am. Oversight v. Hegseth*, 788 F. Supp. 3d 14, 18 (D.D.C. 2025) (citing *Armstrong I,* 924 F.2d 282, 284, 288 U.S. App. D.C. 38 (D.C. Cir. 1991)).[1]

### b.  Arbitrary and capricious reversal:

Record Retention Schedules like the September 2025 NRRS reflect Defendants' statutory requirements to create and uphold general "standards, procedures, and guidelines regarding records management." *Am. Oversight*, 788 F. Supp. 3d at 18 (quoting 44 U.S.C. § 2904). Courts will involve themselves in changes like the ones found in the September 2025 NRRS because of the inconsistencies they create and the reversals they represent in longstanding agency policy. *See FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 917 (2025) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)).

Once an agency changes course as NASA has done here, courts require it to (1) "display awareness that it is changing position" and (2) offer "good reasons" for the new policy. *FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 917 (2025) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). Where the prior policy created serious reliance interests,

---

[1] "Nothing in the legislative history of the FRA suggests that Congress intended to preclude judicial review of either the agency head or the Archivist's failure to take enforcement action. Indeed, judicial review of the agency head's and archivist's failure to take enforcement action reinforces the FRA scheme by ensuring that the administrative enforcement and congressional oversight provisions will operate as Congress intended." *Id.,* at 296.

the agency must take those interests into account. *Id*. (citing *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016)).

To date, NASA has provided no reason for the policy changes affected in the September 2025 NRRS. (Compl. ¶¶ 60-61, 68). These changes are material and significant: they remove long-standing oversight, transparency and accountability safeguards related to the scheduling and disposition of records in NASA's possession and contradict mandatory NASA policy as outlined in other active agency directives. (Compl ¶¶ 53-54, 60). Unlike prior schedules, the September 2025 NRRS allows NASA to decide for itself which records warrant permanent preservation, without meaningful Archivist oversight. (Compl. ¶¶ 54, 60).

No doubt, these safeguards created serious reliance interests. NASA never identified, evaluated, or addressed how their removal would affect the availability of records and materials relied upon by those (like Plaintiffs) who structured their work around accessing them. (GESTA Decl. ¶¶ 23-29; Williams Decl.¶ 6; De Amici Decl. ¶¶ 4-7). Nothing in the record suggests that NASA conducted any cost-benefit analysis, impact assessments or other evaluation related to their interests or explained why they were outweighed by other considerations. (GESTA Decl. ¶¶ 16-29). NASA was required to grapple with these interests before implementing policy changes that predictably placed the materials in question and the people who rely upon them at heightened risk. *See Encino Motorcars, LLC v. Navarro,* 579 U.S. 211, 221-22, 136 S. Ct. 2117, 195 L. Ed. 2d 382 (2016) (quoting *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 515, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009)).

Lacking any indication of reason or explanation on the record, the court would almost certainly find the implementation of the September 2025 NRRS to be arbitrary and capricious. *See FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 917 (2025).

**2. NASA's closures of the Goddard Library and Database are arbitrary and capricious because they are abrupt, unexplained, and ignore serious reliance interests. (Counts V & VI).**

Plaintiffs are likely to show that NASA shuttered two core knowledge-preservation institutions abruptly and without reasoned explanation accounting for operational consequences, reliance interests, and reckless foreseeable risks. These actions would not survive the "hard look" review required by the court. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Plaintiffs point out that they were caught completely off guard by the closures of the Goddard Library and the Database, given little to no advanced warning or notice. (GESTA Decl. ¶¶ 11; De Amici Decl. ¶ 8; Williams Decl. ¶ 9). Upon reason and belief, NASA has provided no explanation for its decision to close the Database. NASA has publicly characterized the Goddard Library's closure as in keeping with a long-planned consolidation strategy outlined in a 2022 facilities master plan (the "2022 Master Plan") (GESTA Decl. ¶ 13). However, the 2022 Master Plan does not call for closure of the Goddard Library, cessation of Database operations, or mass disposition of library holdings—and NASA has never reconciled that document with the actions taken here." (Compl. ¶¶ 66-67; GESTA Decl. ¶ 14).

NASA's decision to close the Goddard Library and Database disregards Plaintiffs' concrete reliance interests. As Dr. Williams notes, the closures make it impossible for him to carry out planned work of restoring legacy datasets and assist NASA scientists' work. (Williams Decl. ¶¶ 11-13). Dr. De Amici stresses that the Goddard Library's closure compromises his ability to access journals and archives necessary for critical analyses. (De Amici Decl. ¶ 6-10).

The closure of the Goddard Library also disregards concrete reliance interests created by NASA's previously negotiated commitments. In or about 2012, NASA resolved a dispute with

Plaintiff GESTA concerning the Goddard Library, and its terms were memorialized in writing (the "2012 Settlement Agreement"). (Compl. ¶¶ 58-59; GESTA Decl. ¶¶ 19-21, Exhibit A). In the 2012 Settlement Agreement, NASA promised to "maintain a centralized collection of GSFC physical library resources (i.e. hard copy journals and books) at the Greenbelt campus, Building 21" [a.k.a. the Goddard Library]." (GESTA Decl. ¶ 21, Exhibit A).

While Plaintiffs do not ask the Court to enforce the 2012 Settlement Agreement as a labor contract, it demonstrates NASA's promise to (1) make a good faith effort to keep a physical library open at GSFC indefinitely and (2) provide GSFC employees advanced notice of any major disruption to library functions. (Id.). "The Goddard Library's continued operation was not treated as speculative or temporary, but as an established and preserved institutional commitment creating serious reliance interests." (Id. ¶ 22). This reliance included "workforce planning, mission planning, research design, recruitment and retention of scientists and engineers, and long-term career decisions" made by civil servants who understood that GSFC core research infrastructure—including the [Goddard] Library—would remain intact." (Id. ¶ 25). "Employees who relied on those commitments now face the loss of access to irreplaceable materials, the dismantling of established research practices, and uncertainty regarding NASA's adherence to negotiated obligations." (Id. ¶ 26).

NASA cannot reverse course from a settled commitment that induced serious reliance interests without acknowledging the change and providing a reasoned explanation for disregarding those reliance interests. *Encino Motorcars, LLC v. Navarro,* 579 U.S. 211, 221-22, 136 S. Ct. 2117, 195 L. Ed. 2d 382 (2016) (quoting *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 515, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009)). NASA's closure materials never acknowledge the 2012 Settlement Agreement or the reliance it created. (GESTA Decl. ¶¶ 27-28). Completely ignoring

and disregarding their reliance renders the closure decision arbitrary and capricious. *See Navarro and Fox Television Stations, LLC.*

### 3. Plaintiffs are likely to succeed because the September 2025 NRRS and closures are contrary to the FRA and in excess of statutory authority.

The FRA strictly limits destruction and disposal of records and assigns the Archivist a central oversight role. No records may be destroyed except pursuant to the FRA's disposal provisions and approved schedules, and that the Archivist provides standards, oversight, and enforcement functions. *Armstrong I*, 924 F.2d at 284–86.

Plaintiffs are likely to succeed on their claims that the September 2025 NRRS unlawfully shifts appraisal and preservation determinations and dilutes safeguards required by the FRA and applicable NARA regulations, while also conflicting with NASA's own binding internal directives governing records management. (Compl. ¶¶ 53–54, 60–61, 79–84). Those defects render the schedule contrary to law and in excess of statutory authority. 5 U.S.C. § 706(2)(A), (C).

The closures intensify the FRA violation. A permanent shuttering and physical dismantling of a repository is not separable from disposition risk: it functions as the mechanism by which records are removed, separated from provenance, reclassified, and potentially destroyed or irreversibly dispersed. Because the FRA prohibits destruction/disposal outside its statutory scheme, Plaintiffs are likely to succeed on their ultra vires theory (Count VI) to the extent the closures functionally authorize unlawful record loss. *Armstrong I*, 924 F.2d at 284–86.

### 4. Plaintiffs are likely to succeed on their claim compelling nondiscretionary FRA enforcement duties.

The FRA's enforcement provisions are mandatory. Once aware of "actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records," an agency head "shall notify the Archivist." 44 U.S.C. § 3106(a). Where

appropriate, the Archivist "shall request the Attorney General" to initiate an action for "recovery or other redress" and "shall notify the Congress when such a request has been made." 44 U.S.C. § 3106(b).

Plaintiffs allege a rapid mass review and active dismantling of a records repository associated with permanent closures and a schedule that removed safeguards. (Compl. ¶¶ 64–66, 76; Williams Decl. ¶¶ 9; GESTA Decl. ¶¶ 18). This is precisely the type of "actual, impending, or threatened" unlawful destruction or removal that triggers notification requirements by the Archivist and agency head under § 3106. To date, Plaintiffs have no knowledge that either the NASA administrator or the Archivist has complied with § 3106. Plaintiffs are therefore likely to succeed on their § 706(1) claim compelling Defendants to perform those nondiscretionary duties. *See American Oversight v. Hegseth* at 788 F. Supp. 3d at 41–42 (Order ¶¶ 2–4) (where the court applied these provisions in the TRO/PI context and granted tailored relief ordering notice to the Acting Archivist and requesting Attorney General action to prevent imminent deletion of federal records).

### B.  <u>Plaintiffs Will Suffer Irreparable Harm Absent Immediate Relief</u>

Irreparable harm is not speculative here; it is already unfolding. Dr. De Amici's photographs taken on or about February 6, 2026, document an active packing-and-removal operation at the Goddard Library, including large quantities of boxes staged for movement and extensive packing materials consistent with a mass removal event. (De Amici Decl. ¶¶ 12-13, Exhibit A). The images also show records-storage boxes staged near packing supplies and signage referencing shredding near staged materials—evidence that at least some materials are being routed into processes that may include destruction. (Id.)

Harm to records is quintessentially irreparable: once records are destroyed, dispersed, stripped of provenance and context, or commingled in ways that defeat reconstruction, no later merits ruling can restore them. Courts therefore find irreparable injury in FRA cases where there is a meaningful possibility that records will be deleted or destroyed before judicial review can be effective. *Am. Oversight v. Hegseth*, 788 F. Supp. 3d 14, 21 (D.D.C. 2025); *Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*, 565 F. Supp. 2d 23, 29–30 (D.D.C. 2008).

The declarations establish immediate operational and institutional harm. GESTA's President explains that the Goddard Library's closure has undermined trust, destabilized mission planning, and further accelerated the loss of institutional expertise, "impair[ing] not only research but public safety, national competitiveness, and the ability to carry out high-priority missions." (GESTA Decl. ¶ 30, 32). Dr. De Amici explains that closure has already prevented access to subscription-only journals, undigitized historical publications, and rare sources needed to validate crucial data analyses related to space operations including those in human spaceflight. (De Amici Decl. ¶¶ 5–11). Dr. Williams explains that the Goddard Library and Database are inextricably connected, and that destruction of their materials would permanently foreclose invaluable projects attempting to make heads or tails of invaluable raw data gathered from planetary expeditions gathered over the course of decades. (Williams Decl. ¶¶ 7, 10–13). Once such materials are dispersed, discarded, or stripped of provenance, neither Plaintiffs nor the Court can later reconstruct the collection or its contextual integrity through a merits ruling.

Because the evidence shows a live dismantling pipeline already in motion, immediate injunctive relief is necessary both to prevent irreversible harm and to preserve the Court's ability to grant effective final relief.

**C.  <u>The Balance of Equities and Public Interest Strongly Favor Injunctive Relief</u>**

The balance of equities favors preserving the status quo. Plaintiffs seek a temporary pause on disposition and a temporary restoration of access to prevent irreversible harm and to allow meaningful judicial review. Defendants, by contrast, cannot claim a cognizable hardship from delaying irreversible destruction or dispersal for the limited period necessary to adjudicate legality.

The public interest strongly favors compliance with statutes designed to ensure accurate documentation of government activity and preservation of federal records, and it disfavors irreversible destruction that would frustrate judicial review. *Armstrong* emphasized that the FRA reflects congressional intent to ensure agencies adequately document their policies and preserve records of historical and research value. 924 F.2d at 285, 293.

1.  **Safety-sensitive operational work**

Public safety and mission safety further favor injunctive relief. Plaintiffs stress that the loss of these materials increases the likelihood for work-related errors, creating serious safety risks and limiting the agency's ability to prevent accidents in human spaceflight and other high-risk missions. (De Amici Decl. ¶ 11; GESTA Decl. ¶ 6, 31). That heightened risk is a reckless disregard for human life and itself a compelling public-interest basis to preserve the status quo pending judicial review. (See Compl. ¶ 4).

2.  **Institutional knowledge / Learning from disasters**

The public interest also encompasses NASA's institutional capacity to learn from failure and reduce risk over time. Congress and official accident investigations following the Apollo 1, Challenger, and Columbia disasters recognized that institutional memory is inseparable from safety and that loss of hard-won lessons—often learned through failure and, at times, loss of life— creates unacceptable risk of repetition. (Compl. ¶ 4).

Plaintiffs allege that the Goddard Library and the Database serve as repositories of mission critical documentation, technical literature, and provenance materials. (Compl. ¶¶ 55–57; GESTA Decl. ¶ 34). If NASA disperses or destroys these materials, it will erode the agency's ability to learn from prior failures and avoid repeating them. (GESTA Decl. ¶ 30-35).

### 3. Congressional intent as a reflection of the public interest

This safety-and-learning interest aligns with Congress's directive that NASA pursue the expansion of knowledge and ensure the "widest practicable and appropriate dissemination of information" regarding its activities and results; preserving the integrity and accessibility of mission records and research materials is central to that statutory design. (Compl. ¶¶ 3, 38-39, 126; 51 U.S.C. § 20102(d)(1), (3)).

The Goddard Library and the Database are not incidental conveniences; they are institutional mechanisms through which NASA has historically carried out those dissemination and preservation obligations. (GESTA Decl. ¶¶ 4-7). A short, status-quo injunction preventing destruction/dispersal and preserving controlled access pending judicial review advances Congress's design and prevents irreversible contraction of the public's and NASA workforce's access to mission-critical knowledge while avoiding the "permanent loss of records, facilities…at substantial cost to the public and to the future of U.S. space and Earth science leadership." (Id. ¶¶ 34-35).

////

////

////

////

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a TRO and preliminary injunction consistent with the accompanying proposed order.

DATED: February 25, 2026                    **Respectfully Submitted,**

/s/ *Zachary M. Weil*
Zachary M. Weil (DC Bar No. Pending)
Fellowship Law Group PLLC
2429 Nicollet Ave. Floor 2
Minneapolis, Minnesota 55404
(612) 249-8613 Ext. 702
zweil@fellowship.law
molszewska@fellowship.law

/s/ *Ronald P. Weil*
Ronald P. Weil (FL Bar No. 169966) *
The Weil Law Firm P.A.
333 SE 2nd Ave. Suite 2000
Miami, Florida 33131
(305) 372-5352
rweil@weillawfirm.net

*Motion to appear *pro hac vice* forthcoming

***Counsel for Plaintiffs***